COMMONWEALTH *vs.* EVERETT J. MACOMBER, JUNIOR.

Bristol. November 3, 1955. — December 2, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Lottery. Automatic Amusement Device.*

Evidence that a "pinball machine" installed in a store was played by the insertion of a nickel for each game, that the results of the play and the winning of "free games" depended almost entirely on chance, and that after one playing the machine had won twenty "free games" he asked of and received from an employee of the store $1 for such "free games" instead of playing them, warranted a finding that the employee was guilty of promoting a lottery in violation of G. L. (Ter. Ed.) c. 271, § 7, even though the machine was licensed under c. 140, § 177A, inserted by St. 1949, c. 361.

COMPLAINT, received and sworn to in the Third District Court of Bristol on December 2, 1952.

Upon appeal to the Superior Court, the case was tried before *Kalus*, J., a District Court judge sitting under statutory authority.

In this court the case was submitted on briefs.

*John B. Nunes & Harold T. Gilley*, for the defendant.

*Maurice M. Lyons*, District Attorney, *& John W. McIntyre*, Assistant District Attorney, for the Commonwealth.

COUNIHAN, J. The defendant has been found guilty of promoting and setting up a lottery for money or other property of value in Fairhaven in violation of G. L. (Ter. Ed.) c. 271, § 7, the material part of which reads, "Whoever sets up or promotes a lottery for money or other property of value, or by way of lottery disposes of any property of value, or under the pretext of a sale, gift or delivery of other property or of any right, privilege or thing whatever disposes of or offers or attempts to dispose of any property, with intent to make the disposal thereof dependent upon or connected with chance by lot . . . shall be punished by a fine . . . ." A jury found the defendant guilty and he was sentenced to pay a fine. The case comes here upon the defendant's exception to the denial of his motion for a directed verdict of not guilty. There was no error.

The alleged lottery was carried on through the instrumentality of a so called "pinball machine" which was licensed under G. L. (Ter. Ed.) c. 140, § 177A, inserted by St. 1949, c. 361, the material parts of which, so far as this complaint is concerned, read: "(6) No person keeping or offering for operation or allowing to be kept or offered for operation any automatic amusement device licensed under this section shall permit the same to be used for the purpose of gambling. (7) The provisions of section seven of chapter two hundred and seventy-one of the General Laws shall not apply to machines licensed under the provisions of this section."

There was evidence that on December 2, 1952, the defendant was employed in a store in Fairhaven which was

owned by his brother. In the store there were two "pinball" machines which were played by the insertion of a nickel for one game. The record does not disclose how but in some circumstances the player won what is called a "free game." On the day in question two State police officers, who were presumably in plain clothes, entered the store and after ordering coffee and sandwiches from the defendant one of them started to play the machine. He got nickels with which to play, in exchange for other money, from the defendant who took them from a cigar box under the counter. He played the machine for about half an hour and spent about $3.60 in nickels.

He won twenty-four "free games" which showed up on the machine and then he "played off" four of them leaving twenty "free games" showing. He directed the attention of the defendant to these games and asked him for $1. The defendant gave him $1 and then signalled someone who pulled a lever on the machine which released the showing of the "free games." There was also evidence that the results of playing the pinball machine and the winning of "free games" depended almost entirely on chance. The defendant denied that the officer asked him for $1 for the twenty "free games." He admitted that he gave him $1 because he thought he had made a mistake in making change for him earlier.

On this evidence the jury could find that the officer had won $1 upon a game of chance so that they were warranted in returning a verdict of guilty. This court has said, "There are three elements in a lottery, (1) the payment of a price for (2) the possibility of winning a prize, depending upon (3) hazard or chance" and "by the weight of authority a game is now considered a lottery if the element of chance predominates . . . ." *Commonwealth* v. *Lake,* 317 Mass. 264, 267, and cases cited. *Commonwealth* v. *Rivers,* 323 Mass. 379, 381, and cases cited.

The defendant argues that c. 271, § 7, does not apply to machines such as we have here which were licensed under c. 140, § 177A, and he relies upon paragraph 7 of § 177A

which appears to say just that. Section 177A was apparently enacted shortly after the decision in *Commonwealth* v. *Rivers*, which was decided on November 3, 1948, and held that the "free games" functions of the machine constituted a prize or in the language of c. 271, § 7, "property of value." We believe that § 177A which was enacted on May 27, 1949, to become operative ninety days thereafter, was enacted for the purpose of permitting the use and maintenance of automatic amusement devices such as pinball machines, including "free play" pinball machines, if duly licensed and if used for amusement only.

In this connection it is important to note that paragraph 6 of § 177A provides that "No person keeping or offering for operation or allowing to be kept or offered for operation any automatic amusement device licensed under this section shall permit the same to be used for the purpose of gambling." There is no doubt that if the officer received nothing more of value than "free games" there would have been no violation of c. 271, § 7. But in the case at bar there was evidence that the officer who played the game received money for his success and this if believed by the jury plainly constituted a violation of c. 271, § 7.

We believe that if the Legislature intended to modify the effect of c. 271, § 7, as has been repeatedly stated in our decisions, it would have done so in express terms.

*Exceptions overruled.*