MARSHFIELD FAMILY SKATELAND, INC., & others[1]
*vs.* TOWN OF MARSHFIELD
(and five consolidated cases[2]).

Plymouth. February 10, 1983. — June 13, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Municipal Corporations,* By-laws and ordinances. *Constitutional Law,*
Police power, Freedom of speech and press, Home rule, Equal protec-
tion of laws. *Due Process of Law,* Regulation of economic activity.
*Public Entertainment. Video Games.*

In determining whether a town by-law prohibiting the operation of cer-
tain amusement devices within the town was invalid by reason of in-
consistency with provisions of State law allowing municipalities to
license such devices, a court was to make every presumption in favor of
the by-law's validity. [440]
Provisions of G. L. c. 140, § 177A, permitting local licensing boards to
issue licenses for certain coin operated amusement devices did not
foreclose a town from adopting a by-law banning, with certain excep-
tions, the operation within the town of "any mechanical or electronic
automatic amusement device." [440-442]
A town by-law prohibiting, with certain exceptions, the operation with-
in the town of "any mechanical or electronic automatic amusement
device" did not, as applied to video game entertainment, infringe
upon any right of free expression guaranteed under the Federal or
State Constitution. [442-444]
Commercial operators of video game equipment in a town could not suc-
cessfully invoke the overbreadth doctrine to challenge the constitu-
tionality of a town by-law prohibiting, with certain exceptions, the
operation of "any mechanical or electronic automatic amusement

---

[1] The other plaintiffs are Thomas F. Vetra; Ocean Street Canteen, Inc.;
John D. Gunn; Bonnie Parkers, Inc.; Venus II, Inc.; H. & M. Enterprises,
Inc.; B.P. Productions, Inc.; Marshfield Sports Center, Inc. The plain-
tiffs are businesses and businessmen in the town of Marshfield.

[2] The cases were consolidated for trial with the case at bar; they were
instituted by the building inspector of the town against the various plain-
tiff merchants named herein.

device," where the possibility that the by-law might be applied to prohibit coin-operated movie machines did not constitute either substantial overbreadth or a significant deterrent to the exercise of constitutionally protected freedom of expression. [444]

The record in an action by commercial operators of video game equipment in a town, challenging the constitutionality of the town's by-law which prohibited, with certain exceptions, the operation of "any mechanical or electronic automatic amusement device," showed the existence of a reasonable relation between the by-law and a permissible objective of the police power, and thus the plaintiffs demonstrated no violation of their right to due process of law. [445-447]

A town by-law prohibiting, with certain exceptions, the operation within the town of "any automatic or electronic amusement device" did not create a classification violative of equal protection principles, where the town had a rational basis for adopting the by-law. [447-449]

CIVIL ACTIONS commenced in the Superior Court Department on August 12, August 16, September 1, and October 6, 1982.

The cases were consolidated for trial and were heard by *Ford*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Ira H. Zaleznik (Barry E. Rosenthal* with him) for Marshfield Family Skateland, Inc., & others.

*Robert L. Marzelli*, Town Counsel, for the town of Marshfield.

HENNESSEY, C.J. This case involves the validity of a total prohibition by the town of Marshfield of the commercial operation of coin-activated amusement devices. In November, 1981, responding to a request for an opinion, town counsel for Marshfield advised the board of selectmen for Marshfield that the town zoning by-law, adopted in 1972, prohibited the commercial operation of coin-activated amusement devices in every zoning district of the town, as either a principal or accessory use. The board thereupon ceased issuing or renewing licenses for coin-activated amusement devices. This policy was adopted pending presentation at the 1982 annual town meeting of an amendment to the zoning by-law that would allow the

operation of these devices in certain business zones, and a new by-law that would provide for licensing of the devices.

At the annual town meeting in June, 1982, however, the voters defeated the proposals and adopted instead an alternative amendment, General By-Law No. 48 (art. 57 of the town meeting warrant) expressly prohibiting the operation of "any mechanical or electronic amusement device, whether coin-operated or not," with certain exceptions.[3] General By-Law No. 48 was then submitted to the Attorney General for his approval pursuant to G. L. c. 40, § 32.

After passage of General By-Law No. 48, but before its approval by the Attorney General, the building inspector for the town of Marshfield commenced enforcement of the zoning by-law adopted in 1972, by sending violation notices to all persons operating coin-operated amusement devices, ordering them to cease such use of their property. The plaintiff merchants refused to cease operating the amusement devices and in August, 1982, the building inspector instituted court proceedings against them.

On September 30, 1982, the Attorney General approved General By-Law No. 48. The plaintiff merchants then commenced this action in Superior Court seeking a declaration that General By-Law No. 48 is invalid. They also applied for a preliminary injunction against the town to prevent it from enforcing General By-Law No. 48. After a hearing, the trial judge denied injunctive relief to the plaintiffs and they, then, filed a petition for relief with a single justice of the Appeals Court under G. L. c. 231, § 118. The town agreed not to undertake any enforcement proceedings

---

[3]General By-Law No. 48, provides as follows: "1. No person shall keep or cause to be kept, operate or suffer to be operated, on premises owned or leased by him, or subject to his control, any mechanical or electronic automatic amusement device, whether coin-operated or not (as defined under, but not limited to, Chapter 140, Section 177A(2) of the Massachusetts General Laws) except private in-home use, coin-operated juke boxes, pool, billiard, bowling and athletic training devices. 2. Any person found violating the provisions of this bylaw will be punished by a fine of $200 for each offense."

pending the single justice's decision and the single justice ordered the parties to seek a speedy hearing in the Superior Court.[4]

In order to expedite proceedings in the Superior Court, the parties presented a statement of agreed facts. Also by agreement, the merchants developed and submitted a videotape demonstration of parts of the audio visual work of five different video games, along with a written explanation of the videotape. The Superior Court judge held a hearing on these matters. Subsequently, he issued a memorandum of decision applicable to all six cases in which he declined to invalidate the Marshfield by-law. Judgments were entered in all the cases. The merchants then filed their notices of appeal to the Appeals Court, and all actions were consolidated on appeal by order of a single justice of that court. We granted the plaintiffs' application for direct appellate review.

On appeal the merchants attack the validity of both General By-Law No. 48 and the provisions of the zoning by-law adopted in 1972. With regard to General By-Law No. 48, they contend that the total prohibition of coin-operated amusement devices is invalid because it (1) is inconsistent with State law, (2) violates fundamental rights of free expression guaranteed under the First Amendment to the United States Constitution, and arts. 16 and 19 of the Massachusetts Declaration of Rights, and (3) denies the merchants due process and equal protection of the laws under both the State and Federal Constitutions. With regard to the zoning by-law adopted in 1972, the merchants argue that the by-law, properly interpreted, does not prohibit the operation of coin-activated amusement devices either as part of the merchants' principal uses or as accessory uses. They further contend that, if the 1972 zoning by-law is in-

---

[4] The town's stipulation not to enforce both by-laws was superseded by the single justice's subsequent allowance of the merchants' request for stays and injunctive relief pending appeal. Thus, the merchants have been able to continue operation of their amusement devices during the pendency of these proceedings.

terpreted to preclude operation of coin-operated amusement devices, the by-law is invalid for the same reasons that General By-Law No. 48 is invalid. We conclude that General By-Law No. 48 is a proper exercise of the town of Marshfield's police power and we reject all the merchants' arguments as to its invalidity. Since we uphold the express prohibition of coin-activated amusement devices under General By-Law No. 48, we need not address the issues raised with regard to the more general provisions of the 1972 zoning by-law.

1. The merchants' first contention is that General By-Law No. 48 is invalid because it is inconsistent with State law. They assert initially that where, as here, a by-law results in a total ban of a particular activity, we should shift the burden of justifying the exclusion to the municipality. See e.g., *Beaver Gasoline Co.* v. *Osborne Borough*, 445 Pa. 571, 576-577 (1971). We do not follow this so called "Pennsylvania rule," see *Lambros, Inc.* v. *Ocean Ridge*, 392 So.2d 993, 994 (Fla. Dist. Ct. App. 1981), but rather we adhere to the view that every presumption will be made in favor of the validity of a by-law or ordinance. See, e.g., *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 686 (1981) (considering a city ordinance banning self-service gasoline stations); *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 216 (1975) (considering by-law in effect prohibiting billboards even in business districts).

Applying this standard of review, we examine the validity of General By-Law No. 48. Under § 6 of art. 89, the Home Rule Amendment, and § 13 of G. L. c. 43B, the Home Rule Procedures Act, communities may enact legislation to advance the common good so long as it is not inconsistent with State law. See *Bloom* v. *Worcester*, 363 Mass. 136, 145, 149 (1973). In *Bloom*, we resolved that in determining whether a local ordinance or by-law is "not inconsistent" with any general law for puposes of the Home Rule provisions, we would follow "the same process of ascertaining legislative intent . . . as has been performed in the Federal preemption cases and in our own cases involving 'inconsistent' or

'repugnant' local ordinances or by-laws." *Id.* at 155. Under this approach, we emphasized, "[t]he legislative intent to preclude local action must be clear" (footnote omitted). *Id.* We noted that there where State laws on a particular subject are comprehensive or where the Legislature has explicitly limited the manner in which cities and towns may act on a subject, a locality's right to act on that subject may be preempted. *Id.* A local by-law may also be deemed inconsistent where it prevents a legislative purpose from being achieved. *Id.*

In this case, the merchants urge that the local by-law's prohibition of the keeping and use of coin-activated, mechanical, and electronic amusement devices conflicts with G. L. c. 140, § 177A, the statutory provision which allows municipalities to license "automatic amusement device[s]" as defined in that section. Under General By-Law No. 48 a "mechanical or electronic automatic amusement device" is defined as including but not limited to the devices defined under G. L. c. 140, § 177A. The merchants claim that the by-law is inconsistent with G. L. c. 140, § 177A, because it prevents the achievement of the legislative purpose behind G. L. c. 140, § 177A. We disagree. Prior to the enactment of § 177A, we held in *Commonwealth* v. *Rivers*, 323 Mass. 379, 383 (1948), that "free play" pinball machines and similar devices were illegal lotteries under G. L. c. 271, § 7. Section 177A was enacted shortly after our decision in *Rivers* "for the purpose of permitting the use and maintenence of automatic amusement devices such as pinball machines, including 'free play' pinball machines, if duly licensed and if used for amusement only." *Commonwealth* v. *Macomber*, 333 Mass. 298, 301 (1955). Thus, one purpose of § 177A was clearly to remove coin-activated amusement devices from the ambit of the gambling laws and to *allow* localities to license these games. General By-Law No. 48 does not prevent this purpose from being achieved.

The merchants contend, however, that in enacting § 177A, the Legislature did not intend to allow local com-

munities to ban all automatic amusement devices. They rely heavily on our decision in *Turnpike Amusement Park, Inc. v. Licensing Comm'n of Cambridge*, 343 Mass. 435, 438 (1962), where we determined that G. L. c. 140, § 177A, does not give local licensing authorities the power to impose an over-all ban on automatic amusement devices. Our reasoning in *Turnpike Amusement Park, Inc.*, however, is not controlling in the case at bar. The power of a local licensing board to issue licenses under G. L. c. 140, § 177A, is created and defined entirely by the provisions of G. L. c. 140, § 177A. Hence, a licensing board, although it may exercise its broad grant of discretion under the statute to grant or to deny licenses, may not go beyond that statutory grant and adopt a broad policy of denying all licenses. In contrast, local communities, through their by-laws, may supplement the statutory provisions so long as their by-laws are not inconsistent with any State law. See *John Donnelly & Sons, supra* at 214, and cases cited. Hence, the town of Marshfield may do what the licensing board may not do — namely, determine that it will not allow any licenses to be issued. It is clear that in some areas of activity legal business activities regulated by State law may be prohibited by local by-laws. *John Donnelly & Sons, supra* at 214, 222. Section 177A does not reveal any intent by the Legislature to vary this rule. Rather, § 177A reveals only the Legislature's intent to convert the operation of "free play" coin-activated amusement devices from the status of illegal lotteries under the *Rivers* decision to that of legal, regulated activities permitted but not required to operate in a community.

2. The merchants next submit that General By-Law No. 48 is unconstitutional because it infringes on fundamental rights of freedom of expression guaranteed under both the State and Federal Constitutions. They contend that the by-law is facially invalid because it suppresses both video game entertainment, which they seek to present to the public and which they claim is protected expression, as well as other forms of protected expression. We first address the mer-

chants' contention with regard to video game entertainment.

In *Caswell* v. *Licensing Comm'n for Brockton,* 387 Mass. 846, 867-871 (1983), we confronted a similar claim by the plaintiff Caswell that video game entertainment is a form of expression entitled to constitutional protection. We explained that, although entertainment may be entitled to First Amendment protection, "to gain protected status, that entertainment must be designed to communicate or express some idea or some information." *Id.* at 868. On the record before us in *Caswell,* we concluded that Caswell had not demonstrated successfully that video games import sufficient communicative, expressive, or informative elements to constitute protected expression under either the State or Federal Constitution. We stated: "From the record before us, it appears that any communication or expression of ideas that occurs during the playing of a video game is purely inconsequential. Caswell has succeeded in establishing only that video games are more technologically advanced games than pinball or chess. That technological advancement alone, however, does not impart First Amendment status to what is otherwise an unprotected game." *Id.* at 871. We adhere to our reasoning and holding in *Caswell* in the case at bar. The merchants in this case, in an attempt to demonstrate that video games contain sufficient communicative elements to be entitled to constitutional protection, prepared a videotape demonstration of parts of the audio visual work of five different video games,[5] together with a written explanation of the videotape. The videotape and explanation, however, do not demonstrate any more communicative aspects of these video games than were demonstrated by the plaintiff in *Caswell.* We recognize that in the future video games which contain sufficient communicative and expressive elements may be created. We are not prepared in this case, however, to hold that these

---

[5] The five different video games were: "Ms. Pac-Man," "Tron," "Donkey Kong," "Zaxxon," and "Kangaroo."

video games, which are, in essence, only technologically advanced pinball machines, are entitled to constitutional protection.

The merchants further submit that even if the video game entertainment which they seek to present is not protected expression, General By-Law No. 48 is, nevertheless, void under the overbreadth doctrine because it prohibits many forms of expression. They argue, that on its face, the Marshfield by-law would prohibit the operation of coin-activated movie machines, i.e., peep shows, which "are fully protected by the First Amendment." *Fantasy Book Shop, Inc.* v. *Boston,* 652 F.2d 1115, 1124 n.12 (1st Cir. 1981). The merchants, thus, contend that we should invalidate Marshfield's General By-Law No. 48.

We conclude, however, that the merchants may not rely upon the doctrine of overbreadth in this case. In *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610 (1973), the Court acknowledged that the general rule is that a person to whom a statute may be applied constitutionally will not be allowed to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. The Court explained that since "the First Amendment needs breathing space . . . [l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 611-612. The Court admonished, however, that because the overbreadth standing doctrine is "manifestly, strong medicine," the Court has employed it sparingly. *Id.* at 613. In *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 60 (1976), quoting *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 216 (1975), the Court further explained that, if a statute's deterrent effect on protected expression is not "both real and substantial" and if the statute is "readily subject to a narrowing construction," the doctrine of overbreadth may not be employed.

In this case, the merchants have not demonstrated either substantial overbreadth or substantial deterrent effect. Their only possible claim of deterrence is that persons desiring to engage in the operation of coin-activated movies in Marshfield may refrain from doing so out of fear that the Marshfield by-law might be applied to prohibit their actions. The merchants, however, have shown that the by-law would bar only one form of protected expression — coin-activated movies. This potential prohibition of one form of entertainment is not substantial overbreadth. Contrast *Shad* v. *Borough of Mt. Ephraim*, 452 U.S. 61, 66 (1981) (ordinance prohibited all forms of live entertainment). Moreover, it appears unlikely that potential operators of coin-activated movies would be chilled from applying for a license because of the existence of General By-Law No. 48. Rather, they would probably be as willing to apply for a license as are the merchants in this case and, if denied a license on the basis of the by-law, to litigate its constitutionality. For these reasons, we conclude that the merchants may not rely on the overbreadth doctrine to invalidate a by-law which may be applied constitutionally to their own activities. See *Young, supra* at 60-61; *Broadrick, supra* at 615-618; *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 555-557, appeal dismissed, 439 U.S. 803 (1978).

3. The merchants' final contention is that the Marshfield by-law violates the due process and equal protection guaranties of both the State and Federal Constitutions. We note that "the right . . . to pursue one's business" has never been considered to be a fundamental right warranting strict judicial scrutiny. *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 542 (1974), and cases cited. We also emphasize that, as we have determined, this case does not involve protected rights of freedom of expression. Accordingly, since no fundamental rights are involved, the validity of the Marshfield by-law must be judged by the lowest level of scrutiny, the rational basis test. See *New Orleans* v. *Dukes*, 427 U.S. 297, 303 (1976); *Zayre Corp.* v. *Attorney Gen.*,

372 Mass. 423, 433 (1977). Under the rational basis test, "the person making the challenge has an onerous burden of proof in establishing the invalidity of the statute." *Commonwealth* v. *Henry's Drywall Co., supra* at 541. In applying the rational basis standard, we have stated that "[i]f a statute or ordinance serves a legitimate purpose, and if the means the State adopted are rationally related to the achievement of that purpose, the legislation will withstand constitutional challenge" (footnote omitted). *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 686 (1981). We have further explained that "a statutory classification will not be set aside as a denial of equal protection or due process if any state of facts reasonably may be conceived to justify it." *Henry's Drywall Co., supra.* The plaintiffs claim that the Marshfield by-law violates their rights to due process and equal protection because it is not rationally related to permissible legislative objectives and because the singling out of commercially operated amusement devices is an irrational classification. We disagree.

With regard to the plaintiffs' due process challenge, we conclude that the by-law does bear a "reasonable relation to a permissible objective of the police power." *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 216 (1975). The right to pursue trade or business "is not unqualified and, in certain circumstances, must yield to regulations designed to promote the public safety, health, morals and general welfare. Our function is to ensure that no regulation unreasonably interferes with the pursuit of a trade or business. It is not our function to consider the expediency of an enactment or the wisdom of its provisions" (citations omitted). *Henry's Drywall Co., supra* at 544. In this case, Marshfield has chosen to prohibit completely the commercial operation of coin-operated amusement devices rather than to regulate certain aspects of their operation. It is well established that "even a legitimate occupation may be restricted or prohibited in the public interest." *Breard* v. *Alexandria*, 341 U.S. 622, 632-633 (1951). *John Donnelly & Sons, supra* at 222. The issue is whether there is a ra-

tional basis for the prohibition. *Breard, supra.* A town's possible purposes in adopting an ordinance like the instant one may include a number of permissible objectives. For example, it would be reasonable for a town to prohibit the commercial operation of these games to further the legitimate objectives of decreasing noise, traffic, and congestion in the area of the businesses operating the games. Indeed, the record submitted in this case demonstrates that the operation of these games contributes to such problems. From the offer of proof of Marshfield and an affidavit of a retired police officer of Marshfield, it appears that Marshfield is a resort community located on the coast; that a substantial proportion of the influx of summer residents to Marshfield each year are single males under twenty-one years of age; that the Marshfield police department has to increase police patrols in the beach areas during the summer season to maintain order; that any business which causes concentration of young people, particularly in the beach areas in the summer, increases the potential for disorderly conduct as well as the burden on the police department; and that automatic amusement devices do attract as patrons large numbers of young people. Although the by-law in this case might have been drawn more narrowly, for example, to prohibit the operation of these games during only the summer season, we emphasize that "[a] statute or ordinance is not rendered unconstitutional merely because the evidence of record suggests that the 'ultimate efficacy' of achieving the statutory purpose is in question, or that the means to achieve the statutory end is rough, illogical or not the best available, or that the means stated in the statute is not perfectly consistent with the desired result" (footnotes omitted). *Shell Oil Co., supra* at 687. "[L]egislative bodies 'are not required to convince the courts of the correctness of their legislative judgments.'" *Shell Oil Co., supra* at 688, quoting *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U.S. 456, 464 (1981).

The merchants' equal protection argument also fails under the rational basis test. The equal protection guaran-

ty requires us to examine whether the classification chosen by the town of Marshfield rationally furthers a legitimate State interest. *Shell Oil Co., supra* at 690. The merchants urge that the by-law is invalid because, even if Marshfield has a legitimate interest to regulate, the classification, nevertheless, is improper because the State's interest in regulating commercially-operated automatic amusement devices is no different from the State's interest in regulating billiards, bowling, home video games, juke boxes, golf, baseball, and other forms of recreation and amusement. We conclude, however, that it was for the town to determine whether commercially-operated automatic amusement devices pose any greater or different threats to the safety and order of its community than do these other forms of amusement. "Once the Legislature has drawn a classification, 'neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it.'" *Shell Oil Co., supra* at 688, quoting *United States* v. *Carolene Prods. Co.* 304 U.S. 144, 154 (1938).[6] The rationale for this respect for legislative decision making is borne out by the fact that the court in no instance could possibly have before it all of the knowledge and considerations which might have impelled those who voted for the by-law, particularly as that knowledge bore on the legitimate concerns related to the police power. On the record before us, we conclude that the basis for the classification is not "more fanciful than real." *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 425 (1965). Nor do we conclude that the classification is arbitrary or irrational. *See Henry's Drywall Co., supra* at 545. Therefore,

---

[6] The merchants rely on several cases from other jurisdictions where courts invalidated certain bans on the playing of pinball machines on the ground that the bans violated the equal protection clause. *Cossack* v. *Los Angeles,* 11 Cal.3d 726, 734-735 (1974). *State* v. *Bloss,* 62 Hawaii 147 (1980). *People* v. *Palazzolo,* 62 Mich. App. 140, 146-147 (1975). We point out, however, that in *Cossack* and *Bloss,* the courts considered prohibitions by municipalities of some coin-operated amusement games and not others and, therefore, the reasoning of those courts is inapposite. Furthermore, we decline to follow the reasoning of the court in *Palazzolo.*

we do not invalidate it. Accordingly, we reject the merchants' arguments based on both equal protection and due process, and we uphold the validity of General By-Law No. 48.

*Judgments affirmed.*