**Richard O'NEILL, et al., Plaintiffs, Appellants,**

v.

**TOWN OF NANTUCKET, et al., Defendants, Appellees.**

No. 82–1744.

United States Court of Appeals, First Circuit.

Argued Feb. 1, 1983.

Decided July 13, 1983.

Rehearing and Rehearing En Banc Denied Sept. 8, 1983.

---

Amendment to the United States Constitution by revoking the plaintiff O'Neill's license to operate at a particular place amusement machines without having given the plaintiff a right to cross-examine adverse witnesses.

On December 31, 1981 the Town of Nantucket, Massachusetts, acting in attempted compliance with authority conferred by Mass.Gen.Laws Ann. ch. 140, § 177A, licensed the plaintiff O'Neill to operate coin-operated electronic machines on the plaintiff Caldwell's property in Nantucket.

At their January 6, 1982 meeting, the town's Selectmen, being of opinion that they had failed in 1981 to comply with the aforesaid statute, voted that the 1981 license was of no effect, but that the plaintiff O'Neill could continue operating under that 1981 license until the Selectmen could reconsider O'Neill's licensing application in light of procedures which the Selectmen newly promulgated in 1982.

Notified of that vote, Caldwell, acting on his and O'Neill's behalf, and stating that the plaintiffs were not waiving their rights under the 1981 license, applied, in accordance with the new procedures, for a new license for O'Neill.

On January 13, 1982 the Selectmen held a hearing on that application. At the hearing the plaintiffs contended that the proceeding was a revocation hearing; the town claimed that it was a hearing on an application for a new license. At the hearing the Selectmen received such oral testimony, letters, and other matter as was offered and also heard the plaintiffs' counsel's arguments favoring the application.

On January 20 the Selectmen heard further evidence and also argument on each side of the controversy, and then voted both to deny the O'Neill application and to schedule for February 10 a hearing on the proposed revocation of O'Neill's December 31, 1981 license.

In a letter dated February 5, 1983, the Selectmen set forth at some length their reasons for denying the application. It is

M. Robert Dushman, Boston, Mass., with whom Warren D. Hutchison, and Brown, Rudnick, Freed & Gesmer, Boston, Mass., were on brief, for plaintiffs, appellants.

Paul R. DeRensis, Boston, Mass., with whom Susan Hadley Williams, and Powers & Hall, Boston, Mass., were on brief, for defendants, appellees.

Before ALDRICH and BOWNES, Circuit Judges, and WYZANKSI,* Senior District Judge.

WYZANSKI, Senior District Judge.

The issue here raised is whether the defendant Town of Nantucket violated the due process clause of the Fourteenth

---

* Of the District of Massachusetts, sitting by designation.

not in this case necessary to explicate those reasons except to state that they referred to public policies favored by the town.

Meanwhile in a January 28, 1982 letter the Selectmen gave two grounds for a *proposed* order revoking the O'Neill 1981 license: first, that the 1981 license had violated technical descriptive requirements prescribed by Mass.Gen.Laws Ann. ch. 140, § 177A; and second, that the license adversely affected the general good and those considerations which underlay the Selectmen's January 20, 1982 vote denying O'Neill's application for a new license.

At the February 10 hearing the plaintiffs did not appear, and the Selectmen revoked O'Neill's license.

On March 21 plaintiffs filed this action in the United States District Court, 545 F.Supp. 449. Relying on 42 U.S.C. § 1983 and on Massachusetts state law they sought an injunction and damages on the theory that the Selectmen had deprived them of their property without due process of law.

The complaints are solely that the defendants failed to accord the plaintiffs their alleged procedural right to cross-examine the persons on whose statements the Selectmen relied and that the defendants took into consideration their own knowledge of the locale and the general situation. No complaint is made that as a matter of substantive law the town had no power to revoke a license during the term for which it was granted; or that the policy reasons given by the Selectmen for their revocation violated the law of Massachusetts or the United States Constitution or laws.

The plaintiffs sought and were denied a preliminary injunction. Then they and the defendants each filed opposing motions for summary judgment. The court denied plaintiffs' and granted defendants' motion.

The only one of the reasons given by the court for its action which we need consider is the district court's decision that even if it were to be assumed that the plaintiff O'Neill's license constituted a property interest protected by the due process clause, in the revocation proceedings the plaintiffs were not denied their procedural rights under the due process clause. On that crucial point we agree with the court below.

The plaintiffs do not contend that the Selectmen failed to give them appropriate notice both of the hearings and of the policy grounds on which the town proposed to revoke O'Neill's 1981 license.

What the case at bar involves is the withdrawal of a license by a state-authorized licensing board which exercises the power to determine whether at a particular place within a town a person shall be permitted to continue to operate a particular kind of amusement device. We have just been reminded by *Marshfield Family Skateland, Inc. v. Town of Marshfield,* 389 Mass. 436, 447–449, 450 N.E.2d 605 (1983) that "the State's interest in regulating commercially operated automatic amusement devices is no different from the State's interest in regulating billiards, bowling, home video games, juke boxes, golf, baseball and other forms of recreation and amusement... [It is a form of] legislative decision making."

Whether to permit the continued use of premises within a town or other political territorial area is a question of zoning or akin thereto. For more than half a century it has been recognized that in determining on policy grounds zoning prohibitions or *generic* limitations, even those which preclude continued use of premises in ways previously permitted, a local administrative authority makes a political or legislative not a judicial decision, that is, it decides questions which, however much they may affect individuals personally, are nonetheless primarily impersonal questions of community policy of a type traditionally entrusted to a legislative body rather than to a judicial tribunal.

Not only from an historical standpoint but from a perhaps more philosophical view we are led to the conclusion that a zoning or quasi-zoning question does not constitutionally require anything like a judicial hearing. The question as to the purposes for which in the public interest a parcel of real property may be used does not find its resolution by ascertaining precise facts.

The answer does not depend on the sort of data which can fairly be appraised only if the authorized agency has seen the witnesses and observed whether their testimony, reports, views, and the like withstand cross-examination. In determining permissible uses of land the ultimate choice turns on impersonal considerations relating to public policy. The controversy involves principally the kind of arguments with which legislative bodies have long been familiar. To lock into a judicial procedural structure such a debate on policy would be to pretend that the so-called right answer depends in some way on *truth,* when indeed it depends on *preference.* Inasmuch as the policy preferred by the administrative agency is a permissible basis of decision, the due process clause of the Fourteenth Amendment does not generally require judicial procedure by the agency when it prescribes the policy it prefers. *Cf. Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). *See* Lawrence H. Tribe, American Constitutional Law (1978) §§ 10–1, 10–6, 10–7, 10–8 and particularly notes 59 and 60 at p. 514. Tribe fairly summarizes the law when at p. 514 he observes that "procedural due process has not been held to require that the affected individuals or groups be granted a hearing before government acts in a legislative, or broadly rule-making or policy-forming, capacity."

There would be an inherent hypocrisy in pretending that examination and cross-examination of witnesses do or should dictate the *purposes* for which premises may be used. (We need not consider whether when the purposes are permitted by an authority, then the choice of particular *personalities* to take advantage of the permitted purposes requires a judicial rather than a legislative type of hearing.)

Where, as in the case at bar, the zoning authority has given affected parties notice and an opportunity to be heard, and has acted upon openly declared impersonal policy grounds and those grounds are not challenged as being substantively impermissible, the parties who have been adversely affected have had all and perhaps more than all the procedural due process guaranteed to them by the Fourteenth Amendment.

Our analysis of the type of agency action which is here involved shows, without need of our elaborating the obvious, the complete irrelevance of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) and cognate cases upon which the plaintiffs rely. Those cases involve *ad hominem* administrative determinations of whether a particular individual has gained or lost a right he personally claims under a rule or policy adopted by a legislature or an administrative agency acting in a legislative or policy-making function.

*Affirmed.*

BOWNES, Circuit Judge (concurring).

I agree with the result reached by the majority, but write separately to ensure that the majority opinion is not misread as holding that a licensee has no protection under the due process clause.

The majority correctly notes that on January 6, 1982, the Nantucket Board of Selectmen voted that licenses issued in late 1981 for operation of video games in 1982 did not comply with Mass.Gen.Laws Ann. ch. 140, § 177A, and were therefore void. At that meeting the Board also adopted a new regulation requiring a public hearing prior to the issuance of a video game license.

It is my understanding that the Board retreated from its initial position that plaintiffs' license was invalid under the licensing scheme in place prior to the January 6 amendment. Instead, the Board retroactively applied the new regulation, which required it to conduct a public hearing to determine whether plaintiffs' license should be revoked. Under these circumstances plaintiffs were not denied due process of law.