OToole, J.
The plaintiff 1010 Memorial Drive Tenants Corporation (the “Cooperative”) commenced these subsequently-consolidated cases seeking declaratory and injunctive relief as well as review of the Automatic Sprinkler Appeals Board’s (the “Sprinkler Board”) decision to deny it a variance of the requirements of G.L.c. 148, §26Al/2 (the “Sprinkler Statute”). This case concerns the applicability of the Sprinkler Statute to the building owned by the Cooperative. The Cooperative has filed a motion for partial summary judgment, seeking declarations (a) that the statute, by exempting only condominiums and not cooperatives from its full sprinklering requirement, violates the equal protection and substantive due process clauses of the Massachusetts and United States Constitutions; (b) that the Sprinkler Board’s requirement of the functional equivalent of full sprinklerization as a condition of its grant of a variance is illegal; and (c) that its conversion to a condominium building would exempt it from the sprinklerization requirements of the Sprinkler Statute. In addition, the *488 Cooperative appeals, pursuant to G.L.c. 30A, §14, from the Sprinkler Board’s decision to deny it a variance of the statutory requirements. The defendant Sprinkler Board has filed a cross motion for summary judgment.
For the reasons discussed below, the Sprinkler Board’s motion for summary judgment in the declaratory judgment action is ALLOWED and the plaintiffs motion is correspondingly DENIED. In the 30A action, the Sprinkler Board’s decision is AFFIRMED.
BACKGROUND
In Massachusetts, installation of automatic sprinklers is required throughout each unit of a high-rise residential building. G.L.c. 148, §26A requires that all buildings over 70 feet high and constructed or substantially altered after Januaiy 1, 1975 shall be equipped with automatic sprinklers. G.L.c. 148, §26Al/2, enacted in 1986, subjects buildings constructed prior to 1975 to the same sprinklerization requirements as post-1975 buildings. The latter statute, however, contains a limited exception:
Every building or structure of more than seventy feet in height above the mean grade and constructed prior to Januaiy first, nineteen hundred and seventy-five, shall be protected with an adequate system in accordance with the provisions of the state building code; provided however that sprinklers shall not be required to be installed in. .. buildings where construction has commenced prior to January first nineteen hundred and seventy-five and which have been submitted to the provisions of chapter one hundred and eighty-three A [the condominium statute] . . . The head of the [Iocall fire department shall enforce the provisions of this section. (Emphasis added.)
A person aggrieved by a decision of the head of the local fire department has a right to appeal to the Sprinkler Board. G.L.c. 6, §201. The Sprinkler Statute and G.L.c. 6, §201 give the Sprinkler Board authoriiy to grant a variance from the requirements of the Sprinkler Statute or to waive compliance altogether.[2]
The Cooperative, a residential housing corporation organized under G.L.c. 156B, owns the building located at 1010 Memorial Drive in Cambridge. The building itself, which was constructed in 1964, is comprised of 66 residential units. The units are leased on a long-term basis to shareholders in the Cooperative. The Cooperative was created in April, 1971.
According to the proprietary lease signed by all shareholder/tenants of the Cooperative, the tenant covenants that he or she will not, “without the prior written consent of the Cooperative, make any material alterations or additions to the apartment.. .’’Affidavit of Peter Scully, Exhibit B.
By letter dated May 26, 1988, the Cambridge Fire Department (“Cambridge”) advised the Cooperative of the newly enacted Sprinkler Statute and requested the Cooperative to install automatic sprinkler systems throughout the building as required by the state building code. On March 12, 1991, the Cooperative submitted a fire upgrade proposal that provided only for partial sprinklerization in the building.[3] In 1991, the estimated cost for full sprinklerization was approximately $1,000,000, the bulk of which would be assessed pro rata to the Cooperative’s shareholders. The per unit estimated cost for full sprinklering would thus be approximately $15,000. Under the Cooperative’s alternate fire safety upgrade proposal, each shareholder would have the option to install full sprinklering in his or her individual unit.
By letter dated March 21, 1991, the Cambridge Fire Chief rejected the proposed fire safely upgrade, taking the position that full sprinklerization was required. On March 27, the Cooperative filed an appeal with the Sprinkler Board, requesting a variance of the provisions of the Sprinkler Statute.
On February 22, 1994, the Cooperative commenced the present declaratoiy judgment action (Docket No. 94-1003). On April 20, 1994, after this case had been filed, the Board finally held a hearing on the 1991 appeal and on June 20, 1994, the Board issued its decision denying the Cooperative’s request for a variance and ordering the plaintiff to submit a full sprinklerization plan within 180 days and to complete installation by March, 1998. The Cooperative appealed from the Board’s decision. (Docket No. 94-3746)
DISCUSSION
Constitutionality of G.L.c. 148, §26Al/2
In Counts I and II of its complaint, the Cooperative alleges that G.L.c. 148, §26Al/2 violates the equal protection and substantive due process clauses of the Massachusetts and United States Constitutions because it creates a constitutionally-flawed distinction between high-rise condominiums and high-rise cooperative housing corporations by specifically exempting condominiums from its requirements while subjecting residential housing cooperatives to them. The Cooperative asserts that such differing treatment bears no reasonable relation to a permissible legislative objective.
A person challenging the constitutionality of a statute bears a significant burden of proof in establishing its invalidity. Commonwealth v. Henry’s Drywall Co., Inc., 366 Mass. 539, 541 (1974); Marshfield Family Skateland, Inc. v. Marshfield, 389 Mass. 436, 446 (1983). “Absent a showing that a statute burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate state interest.” Dickerson v. Attorney General, 396 Mass. 740, 743 (1986) and cases cited.
Since G.L.c. 148, §26Al/2 implicates neither a suspect class nor a fundamental right, its classification will be upheld if it is rationally related to a legitimate state interest. See id.; Maclnnes v. Comm’r *489 of Public Welfare, 412 Mass. 790, 798 (1992); FCC v. Beach Communications, Inc., 113 S.Ct. 2096, 2101 (1993). The same standard applies to the plaintiffs substantive due process challenge: the statute must bear a reasonable relation to a permissible legislative objective. Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 268-69 (1992); see also GeneralMotors Corp. v. Romein, 112 S.Ct. 1105, 1112 (1992).
Thus, the Cooperative has the considerable burden of proving the absence of any rational grounds which would support the distinction in the statute between condominiums and other buildings. See Zeller v. Cantu, 395 Mass. 76, 84 (1985); FCC v. Beach Communications, supra at 2101. The Cooperative has not made such a showing. In fact, the defendants have offered more than one rational basis for the legislative distinction between condominiums and other buildings.
Contrary to the plaintiffs assertions, condominiums and cooperatives are organized quite differently, and these legal distinctions affect the rights and obligations of condominium owners and cooperative shareholder/tenants. See Bronstein v. Prudential Insurance Co. of America, 390 Mass. 701, 706 (1984). First, each owner in a cooperative acquires an interest in the entire complex and a proprietary lease to his or her own unit. Id. at 704, citing Black’s Law Dictionary at 267 (5th ed. 1979) (emphasis added). The cooperative corporation is the landlord, and any decision to improve the individual units must be a decision of the board of directors of the corporation and not the individual tenants.[4] This contrasts with condominiums whose owner is entitled to exclusive ownership and possession of his or her unit and a right in common to use the common elements. G.L.c. 183A, §4. Cooperatives thus resemble rental units more than condominiums because the shareholder/tenant, like a tenant in a rental apartment, may not typically make material alterations to his or her individual unit without approval by the corporation or the landlord.
The legislature, in drawing the line between condominiums on the one hand and other types of multiunit residential property on the other, could have rationally concluded that tenants in large residential buildings are subject to the will of landlords to maintain the safety of the property and that they need greater protection than condominium residents. Based on these differences, the legislature could have rationally concluded that tenants do not have equal bargaining power to owners in leased or rental properly. A legislature may make a decision based on rational speculation even if unsupported by empirical data or other evidence. FCC v. Beach Communications, supra at 2102.
A law need not be in every respect logically consistent with its aims to be constitutional; rather it is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it. Williamson v. Lee Optical Co., 348 U.S. 483, 487 (1955) (statute prohibiting opticians from fitting or replacing lenses while exempting sellers of ready-to wear glasses did not violate due process or equal protection clause of Fourteenth Amendment). Legislative classification is not an exact science, nor need it be. “Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think.” Id. at 489, citing Tigner v. Texas, 310 U.S. 141 (1940).
Moreover, the legislature is free to take one step at a time, addressing first the part of the problem which seems most acute. See Williamson v. Lee Optical, supra, at 489. In fact, there is some indication that this is precisely what the legislature has done in this statute. As originally enacted, the Sprinkler Statute exempted all high-rise residential buildings constructed prior to 1975 from its requirements, but the legislature narrowed the exceptions in 1986 when the statute was amended to exempt only condominiums constructed prior to 1975. Compare G.L.c. 148, §26A with G.L.c. 148, §26Al/2. Itis nottherole of this court to second guess legislative judgment.
Denial of the Variance[5]
The Cooperative submits that, even if the statute itself is constitutional, the Sprinkler Board abused its discretion in not granting a variance approving the Cooperative’s fire safety upgrade proposal. Under G.L.c. 30A, §14, a court may overturn an agency’s decision if the agency has abused its discretion by acting arbitrarily or capriciously. The party appealing an administrative decision has the burden of demonstrating the decision’s invalidity. Almeida Bus Lines, Inc. v. Department of Public Utilities, 348 Mass. 331, 342 (1965).
The Legislature has delegated authority to the Sprinkler Board to grant a variance from any provision of the Sprinkler Statute and to “determine the suitability of alternate materials and methods of sprinkler installation.” G.L.c. 6, §201. In doing so, the Board “may provide reasonable interpretations” of the Sprinkler Statute. Id.
Although there is no formula for determining whether a delegation of authority is proper or not, the Supreme Judicial Court has suggested a three-part analysis to apply in making that determination: (1) Did the Legislature delegate the making of fundamental policy decisions rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards, or, if the local authority is to develop the standards, sufficient guidance to enable it to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled? ChelmsfordTrailerParkv. Chelmsford, 393 Mass. 186, 190 (1984).
*490 Applying this analysis, G.L.c. 6, §201 (the “Sprinkler Appeals Statute”) delegates the implementation of policy rather than the making of policy decisions to the Sprinkler Board. “The Legislature may delegate to a board or officer the working out of the details of a policy adopted by the Legislature.” Massachusetts Bay Transportation Auth. v. Boston Safe Deposit & Trust Co., 348 Mass. 538, 544 (1965), and cases cited. The Sprinkler Appeals Statute stipulates that the Board may grant variances but it must do so in conformance with the general objectives of the Sprinkler Statute. It is evident from the statutes themselves that the broad objective of the Sprinkler Statute and the Sprinkler Appeals Statute is to protect inhabitants of high-rise buildings from fire hazards. See G.L.c. 6, §201.
The standard provided in the Sprinkler Appeals Statute, while general and open to interpretation by the Sprinkler Board, provides sufficient direction to guide the Board in granting or denying variances. See Burnham v. Board of Appeals of Gloucester, 333 Mass. 114, 118 (1955). The absence of specific standards in legislation will not necessarily render it invalid as an unlawful delegation of legislative authority. Chelmsford Trailer Park Inc. v. Chelmsford, supra at 189-90. The Supreme Judicial Court has upheld standards similarly vague as adequate as long as the policy and purpose of the legislature are clear. See, e.g., Turnpike Realty Co. v. Dedham, 362 Mass. 221, 231-32 (1972); Burnham v. Board of Appeals of Gloucester, supra at 118.
The language of the statute directing the board to “determine the suitability of alternate materials and methods of sprinkler installation,” in conjunction with the statutory purpose of protecting residents of highrise buildings from the dangers of fires is adequate to guide the board in denying or granting variances. The Sprinkler Appeals Statute confers some discretionary power on the Appeals Board, but not unrestrained power to grant or deny variances. See MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 638 (1970). Furthermore, there are sufficient procedural safeguards in place, namely the availability of judicial review, to ensure that the Appeals Board does not abuse its discretion. See Chelmsford Trailer Park v. Chelmsford, supra at 193.
Since the standard set out in the Sprinkler Appeals Statute is adequate, the Board’s decision denying a variance to the Cooperative will not be overturned unless it is arbitrary and capricious. Lyons u. Labor Relations Comm’n, 397 Mass. 498, 503 (1986). The Cooperative has not met its burden on the facts of this case.
The Appeals Board concluded that the Cooperative’s proposal for partial sprinklerization would conflict with the general objectives of the statute. In its conclusion, the Board found that the Cooperative’s proposal would not “provide equivalent life safely to full sprinkler protection.”[6] In requiring the proposal to provide “equivalent life safely” find rejecting the Cooperative’s idea of “compartmentalizing” for fire containment, the Appeals Board was well within the statutory discretion delegated to it under G.L.c. 6, §201 to “provide reasonable interpretations” of the Sprinkler Statute and to approve suitable “alternate materials and methods of sprinkler installation ...”
The Cooperative’s reliance on the Sprinkler Board’s decision involving the Harbor Towers condominium in Boston to support its claim that the Board was arbitrary and capricious in rejecting its alternate fire safety plan in this case is unavailing. The relevant regulations state that Board decisions on specific applications shall not be considered as precedent for future decisions. 530 C.M.R. §201(11). Furthermore, Harbor Towers is a condominium complex which, the Appeals Board determined, was constructed prior to 1975. As such, it was exempt from the provisions of the Sprinkler Statute which exempts certain condominium buildings, but not cooperatives, from its requirements.
Future Conversion
In Count IV of the declaratory judgment complaint, the Cooperative asks the court to declare that a conversion of the 1010 Memorial Drive building from a cooperative to a condominium in compliance with G.L.c. 183A would exempt it from the Sprinkler Statute.[7] Since the parties agree on the material facts, the pertinent question for the court is whether such a conversion would exempt the building from the full sprinklerization requirements set forth in G.L.c. 148, §26Al/2.
The question which the plaintiff seeks to have answered is one of first impression. In Brook House Condominium Trust v. Automatic Sprinkler Appeals Board, 414 Mass. 303 (1993), the Supreme Judicial Court construed related language of the Sprinkler Statute, but expressly declined to rule on the question raised here. The Court in Brook House held that the fact that the building had not been converted to a condominium before 1975 did not take the building outside the condominium exemption in the statute. The Court said that Brook House was exempt from the Sprinkler Statute because two requirements were satisfied; (i) construction had commenced prior to 1975, and (ii) the building “had been submitted to the provisions of chapter one-hundred and eight-three A” in 1981, before the effective date of the Sprinkler Statute.
Although the first condition is also met here, the Cooperative has not been submitted to the provisions of the Condominium Statute and may not at this late date convert to condominiums and thus avoid the requirements of the Sprinkler Statute. The plain language of §26Al/2 indicates that the building must have been converted to condominiums before the statute became effective. “Sprinklers shall not be required to be installed in buildings . . . which have been submitted to [the condominium statute].” The interpretation the Cooperative urges would have the effect of allowing buildings to avoid the requirements of the Sprinkler Statute by post facto complying with the *491 condominium statute. This would defeat the legislative purpose of protecting the residents of these older building from the dangers of fire.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Sprinkler Board’s decision denying a variance to the Cooperative is AFFIRMED. It is further ORDERED that summary judgment enter for defendants. Judgment shall enter declaring that:
1) G.L.c. 148, S 26A1/2 does not violate the equal protection or due process clauses of the Massachusetts or United States Constitution;
2) The Sprinkler Board’s requirement of the functional equivalent of full sprinklerization as a condition of its grant of a variance is valid; and
3) Conversion of the Cooperative to a condominium building would not exempt it from the requirement of the Sprinkler Statute.

M.G.L.c. 6, §201 provides, in pertinent part, ‘The appeals board may grant a variance from any provision of section twenty-six A 1 /2 of chapter one hundred and forty-eight or from any provision of the rules and regulations promulgated by the fire safety commission . . . and may determine the suitability of alternate materials and methods of sprinkler installation and may provide reasonable interpretations of said section twenty-six Al/2 and said fire safety commission rules and regulations; provided, however, that appeals board decisions shall not conflict with the general objectives of said section twenty-six A 1/2.”
The Cooperative requested only a variance, not a waiver, during its hearing before the Sprinkler Board.

Key components of the cooperative’s upgrade proposal were i) common area sprinkler installation, and ii) the installation of one sprinkler head in the entry of each residential unit.

Under the by-laws of the 1010 Memorial Drive Cooperative, each stockholder’s shares are allocated to a particular unit. The value of the shares allocated to any unit corresponds to the portion of the value of the Cooperative’s equity in the land and building attributable to that unit. The management of the Cooperative and the building is conducted through the Cooperative’s board of directors, elected by its stockholder/leaseholders. (By-laws, Arts. Ill, V.)

Because the Cooperative requested only a variance, not a waiver, when it appeared before the Sprinkler Board, it cannot raise the issue of a waiver for the first time on appeal. Even if it could raise this issue, however, it would not change the result because a waiver of the statutory requirements would be more, not less, difficult to obtain.

In particular, the Sprinkler Board concluded, “(I]nsufficient information [was] presented by Appellant to show that partial sprinkler protection and the addition of alternate methods provides equivalent life safety to full sprinkler protection. In particular, the appellant’s proposal depends on the theory of compartmentalizing a fire, which will put both residents and fire fighters at greater risk than there would be if the building were fully sprinklered as required by law.”

The defendants’ claim that the failure of the Cooperative to raise this issue before the Sprinkler Board prevents it from raising it for the first time on appeal from the Board’s decision is without merit. The Sprinkler Board is not authorized to make declaratory judgments.