American Motorcyclist Association & another[1] vs.
Park Commission of Brockton.

Nos. 88-P-1222 & 89-P-629.

Plymouth. May 15, 1990. - August 5, 1991.

Present: Kass, Smith, & Gillerman, JJ.

Further appellate review granted, 411 Mass. 1104 (1991).

Motorcycle. Moped. Regulation. Parks and Parkways. Administrative
Law, Regulations. Municipal Corporations, Park commissioners. Con-
stitutional Law, Police power, Equal protection of laws.

A municipal park commission had authority under G. L. c. 45, § 5, to
adopt a regulation prohibiting the operation of motorcycles and mopeds
on the roadways within a certain park. [151-153]
A regulation of a municipal park commission prohibiting the operation of
motorcycles and mopeds on the roadways within a certain park was a
constitutionally permissible exercise of the police power, and violated no
equal protection rights of the operators of such vehicles. [153-156]
Provisions of G. L. c. 90, § 1B, securing the right of moped operators "to
use all public ways in the commonwealth" were not inconsistent with a
municipal park commission's regulation prohibiting the operation of
mopeds within a certain park, on roadways to which the public had
access, but which had not been accepted as public ways. [156]

Civil action commenced in the Superior Court Depart-
ment on September 30, 1987.

The case was heard by John M. Xifaras, J., on a state-
ment of agreed facts, and a motion for relief from judgment
was also heard by him.

Donald A. Harwood for the plaintiffs.

Catherine P. Sabaitis, Assistant City Solicitor, for the
defendant.

Smith, J. On May 19, 1987, the park commission for the
city of Brockton (commission) adopted a regulation which
prohibited the operation of any "motorized two-wheeled cy-

---

[1] James Slade.

cle, such as a moped or motorcycle, on the roadways and/or within D. W. Field Park." The regulation also prohibited the operation of "any two, three or four[-wheeled] motorized cycle on any property under the jurisdiction of the Park Commission." Shortly after the enactment of the regulation, American Motorcyclist Association, a nonprofit organization composed of members with a common interest in the operation of motorcycles, and James Slade, a resident of Brockton (plaintiffs), filed a complaint seeking declaratory and injunctive relief. They requested that the regulation be declared illegal and unconstitutional and that the commission be permanently enjoined from enforcing the regulation. The matter was heard by a Superior Court judge, sitting without a jury. The parties submitted the case on a statement of agreed facts.

After listening to arguments of counsel, the judge found in favor of the commission. Judgment was entered declaring the regulation to be constitutional and denying the plaintiffs' request for a permanent injunction. Later, the plaintiffs brought a motion for relief from judgment pursuant to Mass.R.Civ.P. 60(b)(1) and (6), 365 Mass. 828-829 (1974), to vacate the judgment. They argued that the decision was mistaken with regard to certain statutory and constitutional rights guaranteed to the plaintiffs. The judge denied the motion and the plaintiffs also appealed from that denial. Both appeals were later consolidated in this court.

Here, the plaintiffs claim that the regulation is (1) invalid because it is inconsistent with State law, and (2) unconstitutional because it (a) is overbroad, (b) violates due process, and (c) violates their equal protection rights. In deciding the plaintiffs' claims of error, "we adhere to the view that every presumption will be made in favor of the validity of the [regulation]." *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 440 (1983). We consider first the regulation's ban on the operation of motorcycles in the park.

A. *The Ban on the Operation of Motorcycles in the Park.*

We summarize the agreed facts and other facts that are not disputed. D. W. Field Park (park)[2] in Brockton is a 650 acre park with six lakes and an eighteen hole municipal golf course. It is used by Brockton residents for fishing, picnics, jogging, bicycling, walking, and recreational driving. There are approximately six miles of roadways within the park. The roads have not been accepted as public ways, although the public has a right of access to them. The roads are winding, twenty feet wide, and are for one-way traffic only. They are divided in half by a solid line. The right half is designated for motor vehicles; the left half is designated for joggers, bicyclists and walkers. In the past, the commission has regulated the roadways in the park. In the 1950's, the commission banned commercial vehicles; traffic was changed from two-way to one-way approximately ten years ago; the park has been closed at night since 1982; and during peak times in the warm weather, when traffic is heaviest, the roads in the park have been closed.

Because of complaints by citizens, particularly joggers and elderly citizens, of speeding motorcycles, noise, and congregation of some motorcyclists, the commission in May, 1984, began examining the question whether mopeds and motorcycles should be banned from the park. Traffic studies were conducted, and public hearings were held on the matter. As a result, the commission enacted the regulation.

1. *The plaintiffs' claim that the regulation is inconsistent with State law.* The plaintiffs' claim that the regulation is invalid because it conflicts with State law, namely G. L. c. 90. They claim that the statute's comprehensive treatment governing the operation of motor vehicles upon ways in the Commonwealth precludes local regulations on the same subject.[3]

---

[2]D. W. Field Park is the only park in Brockton that has roads.

[3]In support of their argument, the plaintiffs rely on § 1, the definition section of G. L. c. 90 (1986 ed.). They note that in that section "motorcycle" is defined as a motor vehicle and the "right to operate" a motor vehicle is defined as "the privilege of operating motor vehicles on the *ways* of the commonwealth" . . . (emphasis added). The plaintiffs point out that the definition of "way" in § 1 is "any public highway, private way laid out

It has been held that "[u]nder § 6 of art. 89, the Home Rule Amendment, and § 13 of G. L. c. 43B, the Home Rule Procedures Act, communities may enact legislation to advance the common good so long as it is not inconsistent with State law." *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. at 440. Generally, the decisions concerning alleged inconsistencies of local regulations with State statutes, "have given considerable latitude to municipalities, requiring a sharp conflict between the local and State provisions before the local regulation has been held invalid." *Bloom* v. *Worcester,* 363 Mass. 136, 154 (1973). A sharp conflict between a local regulation and State legislation "appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law." *Rogers* v. *Provincetown,* 384 Mass. 179, 181 (1981), quoting from *Grace* v. *Brookline,* 379 Mass. 43, 54 (1979).

The plaintiffs' reliance upon the above line of decisions is misplaced. We are concerned here with a regulation adopted by a park commission. Public parks play an important part in regard "to the health and general welfare of all the citizens of a state." *Commissioner of Int. Rev.* v. *Sherman,* 69 F.2d 755, 759 (1st Cir. 1934). In recognizing the important governmental function performed by park commissioners, see *Strachan* v. *Mayor of Everett,* 326 Mass. 659, 662 (1951), the Legislature has given specific authority to park commissioners to "lay out and improve public parks, *make rules for their use and government* . . . and do all acts needful for the proper execution of their powers and duties . . ." (emphasis added). G. L. c. 45, § 5. Under this grant of authority, we hold, park commissioners are permitted to adopt regulations, such as the one under scrutiny here. Because the Legislature has delegated authority to park commissioners to adopt such regulations, it is not necessary for us to decide

---

under authority of statute, way dedicated to public use, or *way under the control of park commissioners* or body having like powers" (emphasis added).

whether the regulation conflicts with State law.[4] Therefore, the plaintiffs' argument that the regulation is invalid because it conflicts with State law is without merit.

2. *Constitutional challenges to the regulation.* The plaintiffs raise various constitutional challenges to the regulation. For the purposes of constitutional analysis, the regulation, "promulgated under a grant of authority from the Legislature, stands on the same footing as would a statute, ordinance, or by-law." *Boston Police Patrolmen's Assn., Inc.* v. *Boston,* 367 Mass. 368, 374 (1975).

The plaintiffs claim that the regulation is unconstitutional because it infringes on certain fundamental rights, guaranteed explicitly or implicitly by the State and Federal Constitutions. The rights, identified by the plaintiffs, include freedom of speech, association, and assembly and also their right to travel.

Operating a motorcycle in a park does not obtain a protected status under the First Amendment to the Federal Constitution because in order to obtain that status the activity "must be designed to communicate or express some idea or some information." *Marshfield Family Skateland, Inc.* v. *Marshfield, supra* at 443, quoting from *Caswell* v. *Licensing Commn. for Brockton,* 387 Mass. 846, 867-871 (1983). The regulation does not prohibit any *person* from speaking, as-

---

[4]Contrast the decision in *Rogers* v. *Provincetown,* 384 Mass. 179 (1981). In *Rogers,* the court considered the question whether the town's by-law, prohibiting the rental of motorized bicycles (mopeds), was inconsistent with G. L. c. 90, § 1B, and, therefore, invalid. General Laws c. 90, § 1B, inserted by St. 1976, c. 261, § 4, states in pertinent part: "Every person operating a motorized bicycle upon a way *shall have the right to use all public ways in the commonwealth . . .*" (emphasis added). The court noted that the result of the by-law was to burden "the right to operate a moped by adding the additional necessary, although indirect, requirement that those wishing to use a moped in the town must purchase one or rent it outside of Provincetown and transport it into the town." *Rogers* v. *Provincetown, supra* at 182. Because the right was not so conditioned in the statute, the court ruled that the town could not add additional requirements by a by-law. Therefore, it held that the by-law was invalid because it frustrated the purposes stated in c. 90, § 1B.

Our ruling that the Legislature authorized park commissioners to adopt the regulation under scrutiny here distinguishes this matter from *Rogers.*

sembling, or associating with other *persons* in the park.[5] It requires only that when they engage in the above activities that they leave their motorcycles outside the park.

We agree with the plaintiffs that "freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *United States* v. *Guest,* 383 U.S. 745, 758 (1966). But we are unable to perceive how the regulation impedes the plaintiffs' right to travel or serves to punish the exercise of the right of *interstate* movement. "The right to travel does not require the state to avoid any regulation of methods of transportation . . . ." *Ross* v. *Gunaris,* 395 F. Supp. 623, 628 (D. Mass. 1975). Here, the regulation does not prevent any person from traveling once inside the park. It simply bars motorcycles as the mode of transportation.

Because "no fundamental rights are involved, the validity of the [regulation] must be judged by the lowest level of scrutiny, the rational basis test." *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. at 445. It has been held that "[i]n applying the rational basis standard, . . . 'if a statute or ordinance serves a legitimate purpose, and if the means . . . adopted are rationally related to the achievement of that purpose, the legislation will withstand constitutional challenge (footnote omitted).' " *Marshfield Family Skateland, Inc.* v. *Marshfield, supra* at 446, quoting from *Shell Oil Co.* v. *Revere,* 383 Mass. 682, 686 (1981). Under the rational basis test, "the person making the challenge has an onerous burden of proof in establishing the invalidity of the statute." *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 541 (1974). The plaintiffs have not met their burden.

The regulation was adopted to promote public peace and safety, both legitimate objectives of police power. *American*

[5]The plaintiffs argue that the regulation is "overbroad" and, therefore, invalid. "The overbreadth doctrine is essentially a modification of traditional rules of standing and is applicable only to First Amendment claims." *Commonwealth* v. *Klein,* 400 Mass. 309, 313 (1987), citing *Broadrick* v. *Oklahoma,* 413 U.S. 601, 612 (1973). Because we perceive that no protected conduct is implicated here, we reject that claim.

*Motorcyclist Assn.* v. *St. Louis*, 622 S.W.2d 267, 269-270 (Mo. Ct. App. 1981). There is nothing in the record to indicate otherwise.[6] *Commonwealth* v. *Dobbins*, 344 Mass. 272, 275 (1962). The regulation would eliminate the loud noise caused by motorcycles and protect other users of the park from the dangers incident to speeding motorcyclists. Therefore, there is no substantive due process violation because the regulation bears a "reasonable relation to a permissible objective of the police power." *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 216 (1975). We recognize that perhaps the commission might have dealt with the problems caused by the operation of motorcycles in the park in other ways besides the adoption of the regulation. However, considering that no fundamental rights are involved here, the fact that the commission did not do so is not controlling. See *Marshfield Family Skateland, Inc.* v. *Skateland*, 389 Mass. at 447.

The plaintiffs claim that the regulation violates their equal protection rights because it arbitrarily discriminates between persons operating motorcycles and persons operating other types of motor vehicles. This argument also fails under the rational basis test. Under that test we are required to examine whether the classification chosen by the commission rationally furthers a legitimate State interest. *Commonwealth* v. *B & W Transp., Inc.*, 388 Mass. 799, 803 (1983). *Marshfield Family Skateland, Inc.* v. *Marshfield, supra* at 448. As we have already ruled, the regulation was adopted to

---

[6]General Laws c. 90, § 18, as amended by St. 1986, c. 689, § 8, authorizes certain governing bodies, including park commissioners, to make special regulations "prohibit[ing] the use of. . . [motor] vehicles altogether on . . . ways [within their control] . . . ." There are certain requirements that must be met before such regulations are deemed to be valid. One requirement is that the Department of Public Works must certify in writing that such regulation is consistent with the public interest.

There being no claim to the contrary, we assume that the department's certification was, in fact, given. On that basis we are justified in extending judicial deference to the decision of public authorities that there is a rational relationship between the regulation of the park commission and a legitimate public purpose. See generally Tribe, American Constitutional Law § 16-2 (2d ed. 1988).

further legitimate governmental purposes. The regulation's "classification of motorcycles into one group and other motor vehicles into a second class is rationally related to the city's interests as the prohibition of motorcycles" will enhance public peace and safety. *American Motorcyclist Assn.* v. *St. Louis*, 622 S.W.2d at 270. Further, all persons within the class of motorcyclists are treated equally. On this record, we cannot say that the regulation imposes a classification that is arbitrary and lacking in reason. We conclude that the regulation does not violate the equal protection provisions of the State and Federal Constitutions.

   *B. The Ban on the Operation of Mopeds in the Park.*

   In regard to the ban on the operation of mopeds in the park, the plaintiffs claim that *Rogers* v. *Provincetown, supra* (see note 4, *supra*) controls and that the regulation, at least in regard to the operation of mopeds in the park, is invalid. We disagree.

   As we have previously stated, the Legislature has specifically authorized park commissioners to adopt regulations of the type at issue here. Even if we assume that *Rogers* v. *Provincetown, supra* is applicable, the plaintiffs' argument fails for a different reason. General Laws c. 90, § 1B, states in pertinent part, that "[e]very person operating a motorized bicycle [moped] upon a way *shall have the right to use all public ways in the commonwealth . . .*" (emphasis added) (note 4, *supra*). The *Rogers* decision concerned the operation of mopeds on the *public streets* of Provincetown. Here, the regulation bans mopeds from park roadways, which the plaintiffs agree have not been accepted as public ways, although accessible to the public. We think that the regulation, because it pertains only to park roadways and not public streets, is consistent with G. L. c. 90, § 1B, and therefore is valid.

   Our analysis in regard to the plaintiffs' constitutional challenges to the regulation barring the operation of motorcycles in the park is also applicable to the operation of mopeds.

                                           *Judgment affirmed.*