Donald M. SHANKS, Plaintiff,

v.

**FORSYTH COUNTY PARK AUTHORITY, INC., and Lash Sanford, Defendants.**

No. 6:93CV602.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Oct. 4, 1994.

James F. Wyatt, III, Charlotte, NC, for plaintiff.

Michael E. Ray, Winston–Salem, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff, Donald Shanks ("Shanks") has brought this civil rights action against Defendant Forsyth County Park Authority, Inc. ("Park Authority") and Lash Sanford ("Sanford"), the Manager of Tanglewood Park. In his original complaint, Shanks alleges that the Park Authority and Sanford have wrongfully excluded all motorcyclists from Tanglewood Park through a motorcycle ban in violation of North Carolina statutory law, the First and Fourteenth Amendments of the United States Constitution, and similar provisions of the North Carolina Constitution. Shanks seeks injunctive relief as well as attorney's fees and costs under 42 U.S.C.

§ 1988. Shanks also seeks to amend his original complaint under Fed.R.Civ.P. 15(a) in order to add a claim for declaratory relief, add an out of state party-plaintiff in case the Court finds that Shanks cannot assert a right to interstate travel, and add various allegations to solidify his standing. Defendants have moved to deny Shanks' motion to amend his complaint. Defendants have also moved to dismiss all claims, pursuant to Fed. R.Civ.P. 12(b)(6) for lack of standing and failure to state a claim upon which relief can be granted. For reasons discussed below, the Court will DENY Shanks' motion to amend because the Court finds that the proposed amendment to the complaint would be futile. In addition, the Court will GRANT Defendant's motion to dismiss on Shanks' First Amendment claim and GRANT Defendant's motion to dismiss Shanks' equal protection claim. Finally, the Court finds that assuming *arguendo* that there is a right to intrastate travel under the Due Process Clause of the Fourteenth Amendment, such a right is not infringed upon on these facts.

## I.

The facts as stated in a light most favorable to Shanks are as follows. Shanks is a resident of Forsyth County and is duly licensed to ride a motorcycle in North Carolina. He owns and actively rides a motorcycle throughout the United States and Canada. In August of 1992, Shanks was assisting in the "Tour of Tanglewood," a bicycle tour for charity at Tanglewood Park. When Shanks arrived at Tanglewood Park on his motorcycle, a Tanglewood Park employee told him that he could not enter Tanglewood Park on a motorcycle. In addition, several other motorcyclists were also told that they could not enter the park on motorcycles. The reason for this exclusion was a 1981 resolution adopted by the Park Authority which banned all motorcycles from Tanglewood Park. There are signs posted at the entrance which give notice of the motorcycle ban.

In May of 1993, the Park Authority formed a task force to discuss repealing the motorcycle ban for the Tour of Tanglewood. In July of 1993, the Park Authority modified the ban by allowing motorcycles in Tanglewood Park during the Tour of Tanglewood and also giving Sanford, the manager of Tanglewood Park, discretionary authority over the admission of motorcycles at all other times.[1]

In his original complaint, Shanks alleges that "as a direct and proximate result of the wrongful actions of Defendants, the Plaintiff has been wrongfully excluded from Tanglewood Park; has suffered humiliation and mental distress; and has been unreasonably selected for exclusion from this park." Complaint at ¶ 15. Shanks also alleges in his original complaint that "Defendant Sanford does not, based on information and belief, intend to allow motorcycles into the park, except for the Tour of Tanglewood." Complaint at ¶ 9.

Moreover, Shanks seeks to amend his complaint to add a claim for declaratory relief, add an out of state party-plaintiff in case the Court finds that Shanks cannot assert a right to interstate travel claim, and add *inter alia* that in January 1994, Shanks himself was not allowed to enter Tanglewood Park on his motorcycle, that the exclusion of motorcyclists at Tanglewood Park will indefinitely continue in the future, and that Shanks desires to enter the park in the future for recreational purposes.

## II.

The Court will first consider Defendants' motion to dismiss the claims in the complaint. In ruling on a motion to dismiss for failure to state a claim, the Court should accept as true all well-pleaded allegations, and, viewing the complaint in a light most favorable to the plaintiff, should not dismiss the case unless it appears certain that the plaintiff can prove no set of facts which would entitle him to relief. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). Defen-

---

1. In August of 1993, Shanks and other motorcyclists were allowed to enter the Tanglewood Park to assist the Tour of Tanglewood.

dants' main contention on its motion to dismiss is that Shanks does not have standing to sue. The Court finds that it need not determine that question because even if Shanks has standing, he has not stated a claim for which relief can be granted under Rule 12(b)(6). Therefore, the Court will GRANT Defendants' motion to dismiss.

### A. First Amendment Claim

■ Shanks claims that the Defendants' ban on motorcycles violates his freedom of speech rights as guaranteed by the First Amendment. To determine whether Shanks can invoke the First Amendment in challenging the motorcycle ban, the Court must determine whether Shanks' motorcycle riding is expressive conduct. *See Texas v. Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, 2538, 105 L.Ed.2d 342 (1989); *see also Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730–31, 41 L.Ed.2d 842 (1974). The First Amendment protection does not stop at the written or spoken word but can also extend to certain conduct. *Johnson,* 491 U.S. at 404, 109 S.Ct. at 2539. Indeed, while the Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," *id.* (quoting *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)), the Court has also acknowledged that "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Johnson,* 491 U.S. at 404, 109 S.Ct. at 2539 (quoting *Spence,* 418 U.S. at 409, 94 S.Ct. at 2730). To determine whether certain conduct is communicative for First Amendment purposes, courts must ask whether "an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Johnson,* 491 U.S. at 404, 109 S.Ct. at 2539 (quoting *Spence,* 418 U.S. at 410–11, 94 S.Ct. at 2730–31).

In this case, under the standard as articulated in *Johnson,* the Court finds that Shanks' motorcycle riding is not speech within the confines of the First Amendment.

Shanks does not allege that he intended to convey any particularized message by riding his motorcycle at Tanglewood Park nor does it appear that any such message would be understood by those who viewed it. Thus, no speech is involved by Shanks' motorcycle riding so as to bring the conduct within the purview of the First Amendment. *See American Motorcyclist Ass'n v. Park Comm'n of The City of Brockton,* 31 Mass. App.Ct. 149, 575 N.E.2d 754 (1991), *rev'd on other grounds,* 412 Mass. 753, 592 N.E.2d 1314 (1992); *see also State v. Quinnam,* 367 A.2d 1032 (Me.1977). Thus, viewing the complaint in a light most favorable to Shanks, it appears certain that Shanks cannot prove a set of facts which would entitle him to relief under the First Amendment. Therefore, the Court will GRANT Defendants' motion to dismiss on Shanks' First Amendment claim.

### B. Equal Protection Claim

■ Shanks further claims that Defendants' ban on motorcycles violates the Equal Protection Clause of the Fourteenth Amendment. Specifically, Shanks alleges that Defendants' ban on motorcycles infringes upon his fundamental rights of interstate and intrastate travel. The Supreme Court has long recognized a fundamental right to interstate travel. *See Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969) (stating that "[t]his Court long ago recognized that ... our constitutional concepts of personal liberty ... require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."); *see also United States v. Guest,* 383 U.S. 745, 757, 86 S.Ct. 1170, 1177, 16 L.Ed.2d 239 (1966) (stating that "the constitutional right to travel from one state to another ... occupies a position fundamental to the concept of our Federal Union.").

In *Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), the Supreme Court dealt in part with the constitutional right to interstate travel. The Court noted that "the federal guarantee of interstate travel ... pro-

tects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." *Id.* at ——, 113 S.Ct at 763 (quoting *Zobel v. Williams,* 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 2312 n. 6, 72 L.Ed.2d 672 (1982)). The Court then added that "a purely intrastate restriction does not implicate the right of interstate travel, even if it is applied intentionally against travelers from other states, unless it is applied *discriminatorily* against them." *Id.* (emphasis in original).

In this case, Defendant's motorcycle ban does not implicate either of the protections enunciated in *Bray.* First, the only barrier resulting from Defendants' policy is in the immediate area of Tanglewood and would, thus, restrict movement from one area of North Carolina to another. Second, Defendants' motorcycle ban applies to both travelers from North Carolina and travelers from outside North Carolina and is not applied in a discriminatory way. Thus, under *Bray,* the right to interstate travel is not implicated in this case.[2]

While the Supreme Court has recognized a fundamental right to interstate travel, it has not determined whether there is a similar fundamental right to intrastate travel. *See e.g., Memorial Hospital v. Maricopa County,* 415 U.S. 250, 256–57, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1974). While some Circuits have recognized a fundamental right to intrastate travel, *see e.g., King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646 (2nd Cir.1971), *cert. denied,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971); *Lutz v. City of York, Pennsylvania,* 899 F.2d 255 (3rd Cir.1990), other Circuits have not recog-

nized such a right, *see e.g., Wardwell v. Board of Education of City School District of Cincinnati,* 529 F.2d 625 (6th Cir.1976); *Wright v. City of Jackson,* 506 F.2d 900 (5th Cir.1975). The Fourth Circuit has not addressed the issue.[3] Shanks seeks for this Court to determine that there is a fundamental right to intrastate travel. This Court declines to do so.

For equal protection purposes, unless a classification infringes upon a fundamental right or a suspect class, a law or ordinance must only be rationally related to a legitimate state interest. *See City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). In this case, Shanks does not allege that he is a member of a suspect class. Nor does Defendants' motorcycle ban infringe upon a fundamental right. Therefore, rational basis is the appropriate standard of review.

When applying rational basis review, courts presume the constitutionality of the ordinance's classification. *Dukes,* 427 U.S. at 303, 96 S.Ct. at 2517. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *See McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *see also Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979) (stating that where rational basis is the standard, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker."). As stated by the Fourth Circuit, "[a] classification subject to rationali-

---

2. *See also American Motorcyclist Ass'n v. Park Comm'n of the City of Brockton,* 31 Mass.App.Ct. 149, 575 N.E.2d 754 (1991), *rev'd on other grounds,* 412 Mass. 753, 592 N.E.2d 1314 (1992). In *Brockton,* the plaintiffs sought declaratory and injunctive relief from a park commission regulation which prohibited motorcycles and mopeds in the city park. The court held that the regulation did not infringe upon the plaintiffs' right to travel. The court stated:

we are unable to perceive how the regulation impedes the plaintiffs' right to travel or serves to punish the exercise of the right of interstate movement. The right to travel does not re-

quire the state to avoid any regulation of methods of transportation. Here, the regulation does not prevent any person from travelling once inside the park. It simply bars motorcycles as the mode of transportation. *Brockton,* 31 Mass.App.Ct. 149, 575 N.E.2d at 758.

3. While the Fourth Circuit has not addressed the issue, the United States District Court for the Western District of Virginia has determined that there is no fundamental right to intrastate travel. *See Eldridge v. Bouchard,* 645 F.Supp. 749 (W.D.Va.1986), *aff'd.,* 823 F.2d 546 (4th Cir. 1987) (unpublished opinion).

ty review 'must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts which could provide a rational basis for the classification.'" *Jordan by Jordan v. Jackson*, 15 F.3d 333, 356 (4th Cir.1994).

The question in this case is whether this Court can dismiss under Rule 12(b)(6) an equal protection case requiring rational basis review. Few cases have analyzed this question. However, *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir.1992) squarely dealt with this issue. In *Wroblewski*, the Seventh Circuit acknowledged:

> [a] perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R.Civ.P. 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if "relief could be granted under any set of facts that could be proved consistent with the allegations." The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.

*Id.* at 459–60. The court then articulated its method to harmonize the two standards, stating:

> [w]hile we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts" in light of the deferential rational basis standard. *To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to governmental classifications.*

*Id.* at 460 (emphasis added). The court then upheld a motion to dismiss of an equal protection claim under rational basis review where a rational basis for the defendant's policy toward plaintiff was "conceivable and plausible." *Id.* The court also stated that "[t]he complaint's conclusionary assertion that the policy is 'without rational basis' is insufficient to overcome the presumption of rationality coupled with the readily apparent justification for the policy." *Id.*

In this case, Shanks alleges that "[t]he exclusion of motorcycles from Tanglewood Park is not reasonably or rationally related to a legitimate government interest." Complaint at ¶ 18. Shanks also alleges a hypothetical example of the ban's irrationality by stating that "if the purported interest of the Defendants' policy is to regulate noise within the park, the Defendant can do so exclusive of a selective ban of motorcycles by enacting general noise regulations." Complaint at ¶ 18. Shanks then alleges that "the task force admitted that Defendant Sanford's pick-up truck, which is allowed in the park, is noisier than the Plaintiff's motorcycle." Complaint at ¶ 18.

Even taking Shanks' allegations as true, the Court finds that Shanks has not alleged facts sufficient to overcome the presumption of rationality that applies in this case. Like in *Wroblewski*, Shanks' allegation that Defendants' motorcycle ban is not reasonably or rationally related to a legitimate government interest is wholly conclusory. Furthermore, Shanks' allegation that Defendants can regulate noise within the park in other less discriminatory ways assumes only one possible rationale for the ban. It is readily apparent that Defendants' motorcycle ban could be for reasons other than noise. For example, Defendants could rationally conclude that banning motorcycles from Tanglewood Park would increase safety, especially since Tanglewood Park is home to several outdoor activities (golf, horseback riding, fishing, picnicking, etc.) and motorcycles, unlike other vehicles, can be driven off the road at very high speeds. In addition, while other vehicles, such as trucks, could also be driven off-road, trucks are occasionally needed for off-road driving for such legitimate purposes as the maintenance of the park grounds and the transportation of large and/or cumbersome machinery. Clearly, off-road motorcycling would serve no such purposes. Thus, like in *Wroblewski*, Shanks has not alleged

facts sufficient to overcome the presumption of rationality coupled with a readily apparent justification for the ban. Therefore, the Court will GRANT Defendants' motion to dismiss Shanks' equal protection claim.

## C. Substantive Due Process

In determining whether there is a fundamental right to intrastate travel, courts have also looked to the substantive branch of the Due Process clause. *See Lutz v. City of York*, 899 F.2d 255 (3rd Cir.1990) (holding that while there is not a constitutionally protected right of intrastate travel under equal protection, there is a constitutionally protected right to intrastate travel arising from the Due Process clause); *see also* Jonathan Hangartner, Comment, The Constitutionality of Large Scale Police Tactics: Implications for the Right of Intrastate Travel, 14 Pace L.Rev. 203 (Spring 1994); Andrew C. Porter, Comment, Toward a Constitutional Analysis of the Right to Intrastate Travel, 86 Nw. U.L.Rev. 820 (Spring 1992). In *Lutz*, the city of York, Pennsylvania enacted an ordinance which outlawed "cruising" on a portion of the city's roads. *Lutz*, 899 F.2d at 256. The plaintiffs brought an action, seeking declaratory and injunctive relief on the grounds that the ordinance violated their right to travel. In addressing the question of "whether there exists an unenumerated right of intrastate travel," the Third Circuit held that "such a right does. exist, growing out of substantive due process." *Id.*

Initially, the court asserted that "no constitutional text other than the Due Process Clause could possibly create a right of localized intrastate movement...." *Id.* at 267. The court then undertook its determination under the traditional test of substantive due process—whether "the putative right [is] 'implicit in the concept of ordered liberty,'" *id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)) "or 'deeply rooted in this Nation's history and tradition.'" *Id.* (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)). The court cautioned, however, that this traditional test of substantive due process has been narrowed in recent years. Specifically, the

court cited *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) in which Justice Scalia in his plurality opinion, stated that while "the Due Process Clause substantively protects unenumerated rights 'so rooted in the traditions and conscience of our people as to be ranked as fundamental' ... the relevant traditions must be identified and evaluated at the most specific level of generality possible." *Lutz*, 899 F.2d at 268 (quoting *Michael H.*, 491 U.S. at 122, 127 n. 6, 109 S.Ct. at 2344 n. 6)). With this language in mind, the Third Circuit noted that the right at hand was "the right to travel locally through public spaces and roadways." *Id.* The court continued:

> Under York's view, a state or local government could constitutionally prohibit all freedom of movement that does not involve interstate migration, interstate commerce, business between a citizen and the federal government, and (presumably) travel incident to otherwise protected activity. Conceivably this result could be made less implausible by attempting to distinguish a more particularized, protected tradition of travel or wandering on foot ... from an unprotected tradition of localized travel by automobile. But accepting that distinction would imply the constitutionality of the limited travel ban described above, enforced exclusively by state control of the public roadways. It would permit, for example, the prohibition of simply "going for a ride" through one's neighborhood, so long as the prohibition could be effected without burdening the protected forms of travel and justified by any legitimate state purpose it conceivably furthered—for example, conserving gasoline—so as to survive the foregoing requirements rational basis review.

*Id.* Subsequently, the court, while making an "unquestionably ad hoc" determination held that "the right to move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.'" *Id.*

▮ Assuming the court in *Lutz* correctly determined that there is a substantive due process right to intrastate travel, this Court

finds that any such right is not infringed upon in the present case. First, the ban on motorcycles from Tanglewood Park does not prevent people from traveling to the Park. It merely prohibits people from entering the Park on a motorcycle. Second, the ban on motorcycles from Tanglewood Park does not prevent people from traveling once inside the Park. It merely prohibits motorcycles as the means of transportation. People are free to travel inside the Park through other methods of travel such as by foot, car, bicycle, etc. As such, the ban on motorcycles does not impede a person's right to travel but merely regulates the method of travel once inside the Park. Therefore, the Court finds that assuming *arguendo* that there is a substantive right to intrastate travel growing out of the Due Process clause, such a right is not implicated in this case.

### III.

▪ Rule 15(a) of the Federal Rules of Civil Procedure permits amendment of pleadings by leave of court. While Rule 15(a) states that "leave shall be freely given when justice so requires," leave to amend is not automatic and is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988); *see also Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984).

In *Foman*, the Supreme Court mentioned numerous factors to be considered for a motion to amend:

> If the underlying facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *fu-*

*tility of amendment*, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182, 83 S.Ct. at 230 (emphasis added); *see also Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1043 (4th Cir.1984). While the Court noted that District Courts have great discretion in deciding whether to grant or deny motions to amend under Rule 15(a), it cautioned that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.*

▪ As *Foman* points out, futility is one basis upon which to deny a motion to amend. Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

▪ In this case, Shanks seeks to amend his complaint to add a claim for declaratory relief, add an out of state party-plaintiff in case the Court finds that Shanks cannot assert a right to interstate travel claim, and add *inter alia* that in January 1994, Shanks himself was not allowed to enter Tanglewood Park on his motorcycle, that the exclusion of motorcyclists at Tanglewood Park will indefinitely continue in the future, and that Shanks desires to enter the park in the future for recreational purposes. Shanks' amended complaint would add allegations that go strictly towards solidifying his standing. The amended complaint would not, however, add anything which would help Shanks state an equal protection, First Amendment, or any potential substantive due process claim.[4] Because Shanks' proposed amended complaint does not help state a claim under Rule 12(b)(6), it is futile. *See Perkins v. U.S.*, 848 F.Supp. 1236, 1241 (S.D.W.Va.1994) (stating

---

4. As discussed above in Part II–B, the Court finds that under no circumstances does Defendants' policy implicate the right to interstate

travel. Therefore, Shanks' motion to amend his complaint to add an out of state party-plaintiff is futile.

that "amendment of pleadings should not be allowed if it would be an empty or useless gesture. If the proposed amendment cannot withstand a motion to dismiss, the court may deny it.") Therefore, the Court will DENY Shanks' motion to amend his complaint.[5]

## IV.

Because the Court finds that Shanks has not presented a federal claim for which relief can be granted, the Court will also dismiss Shanks' state statutory claim and injunction claim. *See New Beckley Mining Corp. v. International Union, United Mine Workers of America,* 18 F.3d 1161, 1166 (4th Cir.1994) (noting that where a district court dismisses all federal claims, it must also dismiss pendent state claims). Shanks can pursue these claims in state court if he wishes.

## ORDER

For the reasons stated in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), is GRANTED.

IT IS ORDERED that Plaintiff's motion to amend his complaint pursuant to Federal Rules of Civil Procedure, Rule 15(a), is DENIED.

---

**5.** Defendants allege that the proposed amended complaint would be futile because it does not cure the standing defects of the original complaint. Because this Court finds that the proposed amended complaint is futile for a different reason, it will not address whether the proposed amended complaint cures any standing defects of the original complaint.